For supplemental opinion see post, p. 521, 179 So.2d 154.

■ We also agree with appellee that Count X does not allege an action of trespass on the case. We think the several grounds of demurrer adequately point to defects in the complaint that cause us to conclude that Count X does not state a cause of action. The demurrer should have been sustained and for failure to do so the trial court committed reversible error, which works a reversal of the judgment.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.

178 So.2d 529

Phillip J. HAMM, Commissioner of Revenue

v.

W. D. HARRIGAN et al.

Phillip J. HAMM, Commissioner of Revenue

v.

Virginia H. O'MELIA et al.

3 Div. 100, 100–A.

Supreme Court of Alabama.

Sept. 9, 1965.

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Chas. P. Miller,. Asst. Attys. Gen., for appellant.

Chas. B. Arendall, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, M. R. Nachman, Jr., Steiner, Crum & Baker, Montgomery, for appellees.

COLEMAN, Justice.

The commissioner of revenue appeals from two judgments of the Circuit Court of Montgomery County which awarded peremptory writs of mandamus commanding the commissioner to certify to the comptroller that certain sums of money are due to be refunded to the taxpayers, who are the appellees, to the end that the State's warrants shall be drawn so as to make the specified refunds to the taxpayers.

Two cases were tried together and have been so argued on this appeal. The issues in both cases are the same. We shall refer to them as if there were only one case and to the appellees in the singular as if there were only one taxpayer.

The essential facts, as we understand them, are that the taxpayer paid to the State income tax for 1958; that the amount of the tax paid was based and computed on a sum which taxpayer received as a "liquidating dividend" of an Alabama corporation; that the computation was made on the erroneous and illegal premise that taxpayer was required to treat as part of his taxable income an amount equal to the unrealized appreciation in value of certain timberlands which were distributed in kind to the stockholders as liquidating dividends; that the computation was based on the further erroneous premise that such appreciation in value was not exempt from income tax under § 388, Title 51, Code 1940, which exempts "liquidating dividends paid from income of domestic corporations on which the corporation distributing such dividends has paid all income taxes due the state of Alabama in the current or prior tax years"; that the assets so distributed had been acquired from the original capital and the earnings of the corporation; and that the corporation had paid to the state all income taxes due to the state.

It further appears that taxpayer timely filed income tax return; that the department of revenue assessed a tax deficiency; that taxpayer waived notice and requested that the assessment be made final; and that the department did make the assessment final on December 30, 1959. The waiver and assessment in one case recite as follows:

*Waiver.*

"The undersigned attorney at law, duly representing the taxpayers, W. D. and Dorine Harrigan, Fulton, Alabama, in the above matter, and with full authority in the premises, does hereby waive all notice required to be given said taxpayers under the Income Tax Law of the State of Alabama leading to the final assessment of said income taxes; more specifically said taxpayers hereby waive all notice with respect to the assessment of income taxes against them as required and provided by Section 407, Title 51, Code of Alabama 1940, including notice for

hearing any protest regarding making of the assessment for income taxes final; and further waiving notice as to the time and place of hearing any protest as contemplated by said Section 407. Said taxpayers for reasons deemed most beneficial to them hereby and by these present do urge and request the Department of Revenue to make final the assessment of income tax against them on December 30, 1959 for the calendar year 1958 in the amount of $156,982.16.

"The taxpayers herein by requesting the assessment for income taxes against them be made final immediately, hereby reserve the right to appeal from said final assessment in the manner which the law permits them to do."

### Final Assessment.

"WHEREAS, on the 30th day of December, 1959, the State Department of Revenue made an assessment against W. D. and Dorine Harrigan (hereinafter called Taxpayer) for additional income tax due by said Taxpayer under the provisions of the Alabama Income Tax Act (Title 51, Sections 373, et seq., Code of Alabama 1940), for the calendar year of 1958 together with penalty and interest thereon, in the amount as follows:

"Additional income tax ....$150,582.41

"Penalty thereon ..........
"Interest on said tax from the date the same became due to the date of said assessment .............. 6,399.75

"Total amount assessed.... 156,982.16

"and

"WHEREAS, notice of said assessment and of the day set for the hearing thereof has been waived by said Taxpayer, The said Taxpayer having requested that the Department immediately make said assessment final without notice; and

"WHEREAS, it appearing that said assessment is correct and should be made final;

"IT IS, THEREFORE, ORDERED by the State Department of Revenue that said assessment be and the same is hereby made final, and that execution be issued thereon."

The total amount assessed in the other case is $215,456.74. We understand that taxpayer paid the amount assessed, but did not appeal within thirty days as provided by § 140, Title 51, Code 1940.

Taxpayer subsequently learned of the decision in Buchanan v. State, 274 Ala. 592, 150 So.2d 200, originally delivered October 18, 1962. In Buchanan, this court held that, under § 388, Title 51, Code 1940, a liquidating dividend, paid by a domestic corporation, was exempt from income tax, when the corporation had paid all income taxes due to the state, the dividend was distributed in kind, and the assets distributed had been acquired by the corporation solely from earnings and income of the corporation. We emphasize here that in Buchanan, taxpayer appealed under § 140, Title 51, from a final assessment of additional income tax, and did not proceed under § 410 as the taxpayer has done in the instant case.

On December 27, 1962, after the time for appeal had expired, but within the time allowed by § 410, Title 51, the taxpayer made application for refund of the amount paid. The department of revenue refused to certify to the comptroller the amount claimed, or any amount, and taxpayer instituted statutory mandamus proceedings in the circuit court as provided by § 410. The court rendered judgment granting the writ, and from the judgment the commissioner appeals.

The commissioner insists that the refund procedure provided by § 410 is not available where taxpayer has suffered a

final assessment under § 407 and has not appealed therefrom as provided by § 140. Taxpayer argues to the contrary.

The commissioner argues that an assessment under § 407, Title 51, from which no appeal is taken, is conclusive and final as any other judgment of a court and cannot be altered or set aside by a proceeding under § 410, or by any proceeding other than one by which the final judgment of a court can be revised or set aside after the time for appeal has expired.

The question for decision is, does § 410 apply when an assessment has been made final under § 407 and no appeal has been taken under § 140?

We consider first the authorities relied on by taxpayer.

In Curry v. Johnston, 242 Ala. 319, 6 So.2d 397, the taxpayer instituted a proceeding to obtain a refund of overpayments of income tax. The application for refund appears to have been made under Section 345.36 of Act No. 194, approved July 10, 1935, General Acts 1935, page 256, at page 422; which is the progenitor of § 410, Title 51. The trial court overruled the demurrer to the petition for mandamus. The demurrer raised the point that the application for refund was required to be made within twelve months of the date of payment. This court reversed for error in overruling the demurrer. The opinion recites that "This ruling presents the sole question for review." This court decided that Section 345.40 of Act No. 194; § 414, Title 51; made reference to General Acts 1931, page 527, Section 2, which required that application for refund be made within twelve months of the date of payment. See § 913, Title 51, for present provisions of this latter statute. The holding is that the statute required application for refund to be made within twelve months and that this point raised by demurrer was well taken. We find no holding in the opinion that § 410 is available to the taxpayer in cases where a final assessment has been made under § 407 and no appeal has been

taken. The opinion does not disclose that the question presented in the instant case was presented in Curry v. Johnston, supra, and it is certain that the instant question was not decided there. We do note that, with reference to § 407, the court said:

"But the 'assessment,' meaning the final amount found to be due by the Commission (§ 345.33), Code 1940, Tit. 51 § 407, is required to be made within two years after the return was filed 'and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.' § 345.38, Code 1940, Tit. 51, § 412." (242 Ala. at page 321, 6 So.2d at page 398)

With reference to the application for refund and time for bringing suit, the court said:

"It is contemplated the taxpayer may make his application immediately after payment and *before any assessment is made by the Commission.* In such case, he must wait for three months to give time to make the assessment, before bringing suit. Many statutes fix limits for presenting claims, as a condition precedent to the right to sue, and a different limitation for bringing suit after taking the preliminary steps required." (Emphasis Supplied.) (242 Ala. at page 321, 6 So.2d at page 398)

The court does use the word "assessment," when it says that he, meaning the taxpayer, " . . . . must wait for three months to give time to make the *assessment,* before bringing suit." (Emphasis Supplied.) The reference is obviously to the second sentence of § 414, Title 51, which, in pertinent part recites:

" . . . . ; No such suit or proceeding shall be begun before the expiration of three months from the date of filing such claim unless the department of revenue renders a decision thereon within that time . . .."

The "assessment," referred to in the opinion, is not an assessment made in a proceeding under § 407. The first sentence of § 414, expressly excepts from the restrictions of that section proceedings brought under § 407. The "assesment" referred to in the opinion is the "decision" of the State Tax Commission (now department of revenue) referred to in the statute. More accurately, the opinion states that the taxpayer must wait three months, to give the Commission (department of revenue) time to make a decision to allow or reject taxpayer's application for refund, before bringing suit. We are of opinion that Curry v. Johnston does not support the contentions of taxpayer.

In State v. Brown, 254 Ala. 215, 48 So.2d 36, this court held a taxpayer entitled to refund for certain income tax paid to the state. The opinion refers to a stipulation that "taxpayer duly and properly filed application for refund of income tax," and the record discloses such an application. The case, however, was not a proceeding for refund under § 410. This court did note that taxpayer filed petition for refund under § 410, but the petition for refund was filed before the assessment was made final, because the assessment was not final until made so by the decision of this court. We have examined the transcript in State v. Brown, supra. It discloses that the proceeding in the circuit court was an appeal from final assessment pursuant to § 140, Title 51. The bill of complaint and the decree of the trial court so recite. The opinion of this court recites that "Agreements were made from time to time . . . . extending the time for making the final assessment . . . .." Brown sheds no light on the question as to what is the finality of an assessment under § 407, which was not appealed, with respect to § 410. Nothing in Brown supports taxpayer's contention in the instant case.

In Horn v. Dunn Brothers, Inc., 262 Ala. 404, 79 So.2d 11, the trial court, pursuant to a prior decree declaring taxpayer entitled to a mileage tax refund, ordered the commissioner to grant taxpayer's application for the refund. On appeal by the commissioner, this court held that the prior declaratory decree was a final decree, that "Having elected to take no appeal from the (prior) decree of 29 February 1952, the State Department of Revenue lost its right of appeal. Our consideration, is accordingly limited to the trial court's decree of 15 May 1953, from which this appeal is prosecuted." (Par. Added.) Being limited to the last decree, this court did not review the prior decree. The opinion does not disclose whether the department of revenue had made any assessment comparable to the final assessment under § 407, which was made in the instant case. If such an assessment had been made in Horn v. Dunn Brothers, Inc., however, the question whether the assessment was a final judgment and a bar to the relief granted to taxpayer, in the prior decree of 29 February 1952, was a question which should have been raised in the proceedings which were had prior to the rendition of the February decree. The commissioner did not appeal from that decree and this court refused to go behind that decree when the commissioner sought to appeal from the May decree. The result is that the question of the finality of the assessment, if such there was, never reached this court, and the Dunn Brothers case is not authority that an assessment made final under § 407 is not a bar to relief under § 410.

In Graves v. McDonough, 264 Ala. 407, 88 So.2d 371, this court affirmed a decree declaring that the comptroller should draw a warrant in favor of taxpayer as a refund for taxes paid under an escape assessment. The taxpayer asserted that the escape assessment had been made under authority of § 53, Title 51 which provides for notice to the taxpayer, opportunity to appear and be heard, appeal to the circuit court, and trial by jury. Apparently, taxpayer had not appealed as provided by § 53. This court considered whether failure to pursue the statutory remedy for review barred the declaratory proceedings and concluded that

the declaratory proceeding was not barred for such failure. The court said:

"Section 53, Title 51, supra, provides that the tax assessor shall give notice of the escape assessment, and that such person may appear within twenty days and make objection to the assessment, and appeal to the circuit court from an adverse ruling. If no objection is made, the tax assessor shall make the assessment final. But we think the taxpayer by failing to object was not cut off from other remedies which he may have had to contend that the assessment was void for want of legal authority, and to obtain a refund. The assessment is void under the authority of State v. Mortgage-Bond Co. of New York, supra [224 Ala. 406, 140 So. 365]. Being void, the taxpayer was not required to pursue any certain remedy to get it so declared and obtain a refund. 'The necessity for pursuing the statutory remedy does not exist where the assessment complained of is void and illegal.' 84 C.J.S., Taxation, § 513, Note 90." (264 Ala. at page 409, 88 So.2d at page 373)

The income tax assessment in the instant case is not void, as we understand it. The assessment may well be erroneous under Buchanan v. State, supra. The department of revenue had jurisdiction of parties and subject matter. Since the assessment was not void, the rule applied in Graves v. McDonough, supra, does not apply here. In Graves v. McDonough, this court said:

" 'It is the general rule that a taxpayer seeking judicial relief from an erroneous assessment must have exhausted his remedies before the administrative body empowered initially to correct the error. * * * An exception is made when the attempted assessment is a nullity because the property is either tax exempt or outside the jurisdiction.' Security-First Nat. Bank v. Los Angeles County, 35 Cal.2d 319, 217 P.2d 946, 947; Bank of America Nat. Trust & Savings Ass'n v. Mundo, 37 Cal.2d 1, 229 P.2d 345." (264 Ala. at page 409, 88 So.2d at page 373)

In the case at bar, the assessment is not within the exception, but is within the general rule, and the McDonough case seems to be authority in favor of the commissioner and against the taxpayer.

In State v. First National Bank of Auburn, 273 Ala 379, 141 So.2d 196, this court considered the finality of an excise tax assessment made under § 425, et seq., Title 51. The question arose when taxpayer undertook to carry back to 1952 (tax year 1953), a loss which occurred in 1953 and 1954. The state contended that the assessment for 1952 was made final on July 2, 1953, that taxpayer did not appeal under § 140 within thirty days, and, therefore, that there was no way to re-open the assessment and allow a carry-back of the loss sustained in subsequent years. This court rejected that contention, saying that to disallow the carry-back would be to nullify the statute, which expressly authorized the carry-back, and defeat the legislative intent. It seems clear that if, in a tax year, a taxpayer made a profit and owed income tax, he would pay the tax without appealing the assessment; and, if he subsequently suffered a loss, the only way he could carry the loss back would be to re-open the prior assessment. Subject to the restrictions of the Constitution, the legislature has power to provide for the collection of income taxes and to provide for the manner of calculating the tax in allowing relief for losses. The allowance of the carry-back was part of the manner of calculation prescribed by the legislature, and was allowed for that reason. In the instant case, we are not concerned with a legislative act which compels the re-opening of an assessment in order to make the act effective. Neither the facts nor the statute have changed since the assessment was made final in the case at bar. When the assessment was made final, all the facts now relied on by taxpayer were in existence and available to him. In the waiver and request for assessment, he reserved the right to appeal, but did not do so. A change in

the statute, similar to that which led to the decision in State v. First National Bank of Auburn, does not exist here. Actually the appeal in the last cited case was from an assessment for a year other than 1953. The court said:

"Appellee unquestionably is entitled either to a refund of the excise tax paid in the amount of $539.13 for the tax year 1953, by reason of a carry-back to that tax year of a loss in the amount of $8,985.51, or to a credit of said loss against its net income for the tax year here involved as a carry-over to that year. In either event, the same amount of excise tax is involved. Since the State has rejected appellee's application for a refund, by way of a carry-back, what ground is there for denying appellee relief by carrying the loss over to the tax year here involved? Aside from any other consideration, to deny such relief would be unjust. . . . ." (273 Ala. at pages 382, 383, 141 So.2d at page 199)

We are of opinion that the last cited case does not support the decree appealed from in the case at bar.

In Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, the court considered the case of the estate of a taxpayer against which the government asserted claims for both income and estate taxes. Through mistake, the government collected more estate tax than was due. Taxpayer paid the tax and time for bringing a proceeding for refund expired. Subsequently, however, the government brought a new proceeding, arising out of the same transaction, for income tax. The court held that taxpayer could, in the latter proceeding, recoup the excess estate tax he had paid, although an independent proceeding for refund was barred by the statute of limitations. The taxpayer's right to recover was rested solely on the bringing of the latter suit. As to what would have been the situation if the latter suit had not been brought, the court had this to say:

"In a proceeding for the collection of estate tax, the United States through a palpable mistake took more than it was entitled to. Retention of the money was against morality and conscience. But claim for refund or credit was not presented or action instituted for restitution within the period fixed by the statute of limitations. If nothing further had occurred, congressional action would have been the sole avenue of redress." (295 U.S. at pages 260, 261, 55 S.Ct. at page 700)

In the case at bar, no second suit has been brought against the taxpayer and there is no suit in which he may be permitted to recoup or offset the excess tax he has paid.

Both sides rely on State v. Woodroof, 253 Ala. 620, 46 So.2d 553. We think the holding in Woodroof is reason for holding that the court erred in ordering the refund in the instant case.

In Woodroof, this court considered the priority of certain liens for taxes, due the state, over liens due the United States, in a proceeding for dissolution of a corporation. With respect to the perfection of a lien, this court said:

". . . . In the controversy before us, we will act on the assumption that if on June 4, 1948, the State had a lien for taxes due it on the property that went into the hands of the receiver, and that such lien was specific and perfected, we should hold that it took priority over the claim of the United States upon the free funds in the receivership, which arose from a sale of the property on which such lien existed at that time. . . . .

"And we think, as applied to a state's claim of a lien for taxes, such lien is specific and perfected, if the amount of it has been fixed by a proceeding which is binding and conclusive at the date of receivership, and not open for change in any sort of proceeding which might arise thereafter; and that the

lien upon the property which was received by the receiver was not dependent upon any contingency, nor subject to selection, shift or change, and nothing remained to be done then or thereafter to make such lien complete, specific or perfect, or to liquidate the debt, and nothing could be done thereafter to discharge the debt or subordinate such lien but full payment of the debt. . . . ." (253 Ala. at page 630, 46 So.2d at page 561)

The court discussed first an income tax claim of the state for $36.22. With respect to §§ 407 and 410, Title 51, the court said:

". . . . Section 407, Title 51, Code, directs the manner of making the assessment upon hearing and provides for an appeal, as provided in section 140, Title 51. Such assessment has judicial qualities. Birmingham Vending Co. v. State, 251 Ala. 584, 38 So.2d 876. *A judgment on appeal under section 140, supra, is as final as any other judgment. An assessment from which no appeal is taken is likewise conclusive when the procedure provided in section 407, Title 51, is complied with.* (Emphasis Supplied.) If no such procedure as there provided is pursued, the amount shown by the taxpayer's return is *prima facie* the correct amount of his tax liability. If nothing further is done as to his return, such amount remains *prima facie* correct. In that event, it has not become a fixed liability until it shall be assessed, which must be done, if at all, within two years. Section 412, Title 51, Code. The amount of tax so imposed shall be paid on the.15th day of the third month following the close of the fiscal year (subject to future installment payments). This taxpayer was on a fiscal year basis, as of October 31st. The record in this case does not show that there was any assessment made of this income tax as provided in section 407, supra, but the return of the taxpayer was only *prima facie* the correct amount of his liability. And any payment of same was subject to a refund within two years if erroneous. Section 410, Title 51, Code; Curry v. Johnston, 242 Ala. 319, 6 So.2d 397. The amount of the debt secured by the lien was not effectually fixed and, therefore, the lien was not specific and perfected." (253 Ala. at page 631, 46 So.2d at page 562)

Thus the court held that the income tax lien was not perfected because the procedure of § 407 had not been followed and because taxpayer, in such case, could apply for refund under § 410. The court says that a judgment on appeal under § 140 "is as final as any other judgment," and an assessment, from which no appeal is taken, "is likewise conclusive," when § 407 is complied with.

In the case at bar, § 407 was complied with and no appeal was taken. Under Woodroof, the instant assessment was final and conclusive as any other judgment, and was "not open for change in any sort of proceeding which might arise thereafter."

This conclusion is fortified by the court's decision in Woodroof as to the finality of a sales tax claim for $741.71, which was made final under § 767, Title 51. The court said:

"The final assessment not appealed from is as conclusive as the judgment of an ordinary court. It is the judgment of a tribunal constituted a court by the legislature as authorized by section 139 of the Constitution, and is conclusive as such. Being rendered on March 29, 1948, and no appeal having been taken in thirty days, section 140, supra, no attack can be made upon it except such as applies to an ordinary court judgment. It therefore conclusively fixed the amount of the tax claim as of March 29, 1948. State ex rel. Carmichael v. Jones, 252 Ala. 479, 41 So.2d 280 (10, 11).

"Section 883, Title 51, Code, provides for a lien for its payment, when such payment is not made, to cover all property and rights to property real or per-

sonal belonging to such person. There is no selection to be made. There is no contingency in connection with it. It is simply all of it. That means *all*, not a *portion* to be selected or identified by some formula. And that was the status on June 4, 1948, when the receiver was appointed. If a tax lien can be specific and perfected as of that date, this was of that class. . . . ." (253 Ala. at pages 631, 632, 46 So.2d at page 563)

It seems to us that Woodroof is authority that the assessment in the case at bar was final and not subject to revision or refund by a proceeding under § 410.

The reporter will set out §§ 407 and 414, Title 51, Code 1940, and § 410 of same title as amended by Act No. 826, 1951 Acts, page 1457.

§ 407 provides that income tax shall be "assessed" upon blanks in the form to be prescribed by the department of revenue. The assessment so made by taxpayer is not final, but shall constitute a "prima facie" liability, and the words "assessment" or "assessed," as used in the statute, "mean the final determination of the amount found to be due by the department . . . .." If the amount so determined is different from the amount shown by the return, then a day must be set for hearing and notice and opportunity to be heard must be given to the taxpayer. State v. Pollock, 251 Ala. 603, 38 So.2d 870, 7 A.L.R.2d 757. On the day set, the department must ". . . . *finally* fix, determine and assess the amount of tax due and notify the taxpayer . . . ." (Emphasis Supplied.) Within thirty days he may appeal to the circuit court, and, if unsuccessful there, he may appeal to this court. § 140, Title 51.

There are thus three opportunities for a judicial determination of taxpayer's liability. The first determination is made by the department of revenue.

". . . . The Department of Revenue administered by the commissioner is the State tribunal designated by law with judicial functions to pass upon questions of fact or law which may arise in making an assessment. (Citations Omitted.)" Birmingham Vending Company v. State, 251 Ala. 584, 588, 38 So.2d 876, 879.

The second determination is made by the circuit court, in equity. On the trial there, the assessment by the department is prima facie correct. The court shall hear the appeal according to its own rules as practicable. The trial, in effect, is de novo.

The third determination is made by this court. The trial here is, of course, a review based on the record made in the circuit court.

The question arises, which, if any, of the three determinations shall be final so as to bar another proceeding for refund under § 410? Is the decision by this court, on appeal, final, or may taxpayer lose here and then bring a new proceeding under § 410? Suppose taxpayer does not appeal from the circuit court. Is the decision of the circuit court final, or may the taxpayer then bring a new proceeding under § 410? Then, there is the question in the instant case, i. e., may the taxpayer simply not appeal the assessment made by the department of revenue and bring a new proceeding under § 410?

To hold that the legislature intended, by § 410, to provide for a new proceeding to determine the same question after it had been decided once by this court would be contrary to the principle that a matter once adjudicated is finally settled and determined. Irwin v. Alabama Fuel & Iron Company, 215 Ala. 328, 110 So. 566. To hold that a decision by the circuit court, on appeal to it under § 140, is not final and a bar to a new proceeding under § 410, would run counter to the same principle. Why would not a holding that a decision under § 407 is not final be equally contrary to that principle?

In Woodroof, this court construed §§ 407 and 410 to the effect that a taxpayer who had not suffered a final assess-

ment under § 407, had the right to apply for refund under § 410; but a taxpayer, who had suffered a final assessment under § 407, does not have the right to apply for refund under § 410. We are of opinion that the construction in Woodroof is correct and that we ought not to depart from it.

Woodroof was decided in 1950. In 1951, the legislature reenacted § 410, without material change other than substituting "three" for "two" in the second sentence. It is a familiar rule that where a statute has been construed, and is reenacted without material change, such construction must be accepted as a part of the statute. Lindsey Lumber & Export Co. v. Deas, 230 Ala. 447, 161 So. 473.

Taxpayer places some reliance on § 414 of Title 51, wherein the legislature provided that no proceeding shall be maintained for recovery of any tax "alleged to have been erroneously or illegally *assessed* or collected" (Emphasis Supplied.) until claim for refund has been filed with the department of revenue. Taxpayer relies on the use of the word assessed.

We do not think § 414 has the effect of giving taxpayer a remedy under § 410 where he has suffered a final assessment under § 407 and has not appealed. § 414 gives no rights; it limits or takes away rights of the taxpayer. Moreover, a proceeding under § 407 is, in some respect, expressly excepted from the operation of § 410. It is notable also that § 410 has, and § 414 has not, been reenacted since Woodroof was decided.

Taxpayer, in brief, concedes, of course, that Buchanan is not res judicata here, but says that it is ". . . . equally obvious this Court intended Buchanan to have future application in all cases involving similar facts." We agree that the rule in Buchanan should apply to all taxpayers alike, but we do not agree that there has been unequal application of the rule here,

or any unequal treatment of the instant taxpayer.

The instant taxpayer had the same opportunities and the same rights which the taxpayer enjoyed in Buchanan. As we understand it, the statutes were the same in both cases. Taxpayer says that the facts were the same in all material aspects. What then is different?

As it seems to us, the difference is, that in Buchanan, the taxpayer took an appeal under § 140, Title 51, and the instant taxpayer, for good and sufficent reasons which are known to him but not to this court, chose not to appeal under § 140. Where the instant taxpayer was accorded the same right which the other taxpayer had, but did not exercise it, we do not think that the law favored one over the other, or, in any sense, denied to either of them that which was his exact and equal due.

On the trial of the instant case, counsel for taxpayer stated to the court:

". . . . There is no dispute between us that a final assessment was entered by the State of Alabama and that no appeal under Section 140 was taken. . . . ."

The following colloquy occurred between the court and counsel for the commissioner:

"THE COURT: The only issue raised by the State is the right to bring this action when no appeal was taken from the assessment. Is that the only issue raised by the State?

"MR. MILLER: Your Honor, that is one of the issues, and it is the primary issue raised by the State that mandamus is not the proper action at this point. . . . ."

For reasons we have undertaken to state, we are of opinion that the state's contention is well taken and that the decree for the taxpayer should be reversed and the cause

**384**

remanded for entry of a decree not inconsistent with this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.