411 P.2d 751

**GEORGE A. RUTHERFORD, INC.,** a corporation, Relator-Appellee,

v.

**Max M. GONZALES,** Commissioner of Revenue of the State of New Mexico, Respondent-Appellant.

**MORRISON–KNUDSEN COMPANY, Inc.,** a Delaware corporation, Henry J. Kaiser Company, a Nevada corporation, and F. & S. Contracting Company, a Montana corporation, a joint venture, Relator-Appellee,

v.

**Max M. GONZALES,** Commissioner of Revenue of the State of New Mexico, Respondent-Appellant.

No. 7755.

Supreme Court of New Mexico.

Feb. 28, 1966.

Jones & Stiff, J. Victor Pongetti, Albuquerque, for appellee George A. Rutherford, Inc.

Modrall, Seymour, Sperling, Roehl & Harris, James P. Saunders, Jr., Allen C. Dewey, Jr., Albuquerque, for appellee Morrison-Knudsen Co., Inc.

Earl E. Hartley, Atty. Gen., Joel M. Carson, Jerry Wertheim, Asst. Attys. Gen., Santa Fe, N. M., for appellant.

COMPTON, Justice.

The respondent appeals from a judgment directing him to refund to or credit relator with moneys paid as emergency school taxes on proceeds received for services rendered the United States Government allegedly assessed and collected by respondent under an unconstitutional statute. We will first dispose of the appeal as it relates to the relator George A. Rutherford, Inc.

The essential facts are not in controversy. The relator is a general contractor operating under the laws of the State of New Mexico. In such capacity he constructed for a lump sum certain buildings for the United States under definite contracts. During January 1959, and continuing through March 1960, the relator paid to the bureau of revenue, pursuant to the provisions of the New Mexico School Tax Act, taxes on proceeds received by him in the performance of his contract with the United States Government. The New Mexico School Tax Act for the period in question did not impose a like tax on proceeds received by contractors contract-

ing with the State of New Mexico. However, the taxes thus paid by the relator were not paid under protest.

Thereafter, on January 3, 1963, the relator filed a petition with respondent seeking a refund of the amount in controversy or for a credit of such amount under the provisions of § 72–16–23, N.M.S.A., 1953 Comp. The commissioner conducted a hearing on the relator's petition on June 5, 1963, and, by order, denied the refund for the reason that § 72–16–23 prior to its repeal and reenactment, or as amended in 1963, does not authorize a refund or credit of moneys paid under mistake of law.

Upon review of the record before the commissioner, the court concluded that § 72–16–5, N.M.S.A., 1953 Comp., as amended by Laws 1957, ch. 187, § 1, and by Laws 1959, ch. 78, § 1, under which the taxes were assessed and paid was unconstitutional as applied to the relator; that relator had rights and remedies under § 72–16–23, supra, independent of the rights or remedies as provided by § 72–16–28, N.M.S.A., 1953 Comp.; that the repeal and reenactment of § 72–16–23, Laws 1963, ch. 266, § 1, did not effect relator's administrative proceedings then in progress; and that relator was entitled to a refund of the amount unlawfully paid. Judgment was entered accordingly, and the respondent appeals. Error is assigned upon the conclusion of law.

We see no purpose in discussing the constitutionality of § 72–16–5, supra. See Phillips Chemical Co. v. Dumas Independent School Dist., 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384; Bradbury & Stamm Const. Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808.

■ Appellant relies upon § 72–16–28, supra, for a reversal of the judgment. The section reads:

"No injunction or writ of mandamus, or other legal or equitable process, shall issue in any suit, action or proceeding in any court of this state, against any officer of the state, to prevent or enjoin the collection of any tax, penalty or interest under this act [72–16–1 to 72–16–47], but after payment of any such tax, penalty or interest under protest, which protest shall be duly verified by oath and shall set forth the grounds of objection to the legality of the tax, the taxpayer may bring action against the bureau of revenue in the district court of Santa Fe County for the recovery of any tax, interest or penalty so paid under protest. No such action shall be instituted more than four [4] months after such payment under protest is made, and failure to bring suit within said four [4] months shall constitute a waiver of said protest and of all claims against the state on account

of any illegality in the tax so paid. No grounds of illegality of the tax shall be considered by the court other than those set forth in the protest filed at the time payment is made; Provided, however, that any payments of tax made under protests subsequent to the original protested item and prior to the institution of the action within the aforesaid four [4] months, may be included or incorporated in the same action. Provided further payments made under protest after a suit is instituted on a prior protest shall be held subject to the determination of said suit if the protest so provides and is made on the identical legal grounds, and no waiver of protest shall result although the period of four [4] months may have elapsed before the action is finally determined. Appeals from the final judgment of the district court may be taken to the Supreme Court by either party in the same manner as appeals in civil cases are taken.

"If in any such action judgment is rendered for the plaintiff, the amount of the judgment shall first be credited on any taxes due from plaintiff under this act and on any penalties or interest due on such taxes, and the balance of the judgment shall be paid to plaintiff. In any such judgment, interest shall be allowed at the rate of two per cent [2%] per year upon the amount found to have been illegally collected. Such judgment and interest shall be paid out of the suspense fund hereinafter provided."

We think the above statute disposes of the appeal. Where the legality of an assessment is challenged, taxes must be paid under protest, and the above section provides the exclusive method to follow. Failure to comply with this method leaves the taxpayer without an available remedy or right of action. In re Blatt, 41 N.M. 269, 67 P.2d 293, 110 A.L.R. 656; Curry v. Johnston, 242 Ala. 319, 6 So.2d 397; American Can Co. v. Gill, 364 Ill. 254, 4 N.E.2d 370; People ex rel. Eitel v. Lindheimer, 371 Ill. 367, 21 N.E.2d 318, 124 A.L.R. 1472. See also Pacific American Fisheries v. Mullaney, 108 F.Supp. 133, 14 Alaska 75; United States v. Bureau of Revenue of State of New Mexico, D.C., 217 F.Supp. 849; Jaynes v. Heron, 46 N.M. 431, 130 P.2d 29, 142 A.L.R. 1191.

■ But appellee contends that § 72–16–23, supra, affords a remedy notwithstanding the provisions of § 72–16–28, supra. Section 72–16–23 has been the subject of legislative consideration many times. The Act was originally enacted in 1935, ch. 73, § 308. Immediately prior to 1959, the section read thusly:

"If upon examination of any return made under this act it appears that the taxpayer has paid an amount in excess of that properly due by him under the provisions of this act, the amount of such excess shall be credited by the Tax Commission against any tax or installment thereof thereafter due from the taxpayer under the provisions of this Act."

In 1959 it was amended to read:

"If under the Emergency School Tax Act the taxpayer has paid an amount in excess of that properly due from him, or has paid an amount not due from him by reason of no tax liability, the amount of the excess or erroneous payment shall be credited by the bureau of revenue against any emergency school tax thereafter due from the taxpayer; provided, that if the credit or any part of the credit cannot be utilized by the taxpayer, as provided in this section, then the credit or unused balance of the credit may, upon application by the taxpayer, be refunded out of the emergency school suspense fund on certificate, which certificate states that the commissioner of revenue finds the refund is proper."

In 1963 it was again amended to read:

"If, under the Emergency School Tax Act, the taxpayer has paid an amount in excess of that properly due from him, or has paid an amount not due from him by reason of no tax liability, *and the excess payment or erroneous payment was paid by [reason] of a mistake of fact, as distinguished from a mistake of law,* the amount of the excess or erroneous payment shall be credited by the bureau of revenue against any emergency school tax thereafter due from the taxpayer. If the credit, or any part of the credit, cannot be utilized by the taxpayer, as provided in this section, then the credit or unused balance of the credit may, upon application of the taxpayer, be refunded out of the emergency school suspense fund on certificate, which certificate states that the commissioner of revenue finds the refund is proper; provided, however, no claim or application for credit or refund shall be filed more than eight months after payment, and failure to file a claim or application with the bureau within that time shall constitute a waiver of claim against the state on account of the questioned payment." (Emphasis supplied.)

We are compelled to disagree with appellee; to hold as he contends, we would effectively nullify § 72–16–28, supra, and render it without purpose. The statutes are to be read together and, as we construe them, § 72–16–23, supra, affords a remedy

where taxes are paid under mistake of fact, for instance, excessiveness or errors in assessments; while § 72–16–28, supra, provides the exclusive remedy for payment of taxes under mistake of law. Noticeably, § 72–16–23, supra, as amended in 1963, specifically excludes refunds for payments made under mistake of law. In our view the 1963 amendment above was not a change in the law, but was a clarification of the meaning of the statute as it read previously. Otherwise, § 72–16–28, supra, was at all times surplusage and meaningless. Under the circumstances, it is unnecessary for us to consider the question whether the amendment operates retroactively.

We conclude that the court erred in its conclusion of law upon the facts found. Compare Board of Com'rs of St. Joseph County v. Ruckman, 57 Ind. 96.

We find support for our conclusion in § 72–16–44, N.M.S.A., 1953 Comp. The section reads:

"There is hereby appropriated out of the 'emergency school fund' the sum of one hundred twenty thousand dollars ($120,000) per annum, or as much thereof as may be necessary for the purpose of making refunds of taxes, penalties and interest paid under this act * * *. This appropriation shall be set up as the 'emergency school suspense fund,' at the rate of twelve thousand dollars ($12,000) per month during each fiscal year until the total amount appropriated is set up.

*"In addition to the foregoing appropriation, all money paid under protest,* as above provided, shall be covered into the emergency school *suspense* fund. If, in the case of such payments under protest, no proceeding as authorized by this act be instituted within the time allowed, or if such proceeding terminate in favor of the bureau of revenue, the moneys so paid under protest shall be covered into the emergency school fund and distributed as other receipts of that fund. If such proceeding terminate in favor of the taxpayer, the amount adjudged in his favor together with interest thereon as provided by this act shall be paid to him out of the emergency school suspense fund on proper voucher approved by the bureau of revenue. All other refunds approved by the bureau of revenue as by this act provided shall be paid out of the emergency school suspense fund on proper voucher approved by the bureau of revenue." (Emphasis supplied.)

Obviously, the above section provides for administrative refunds to meet unan-

ticipated emergencies occurring in the normal course of operation of the bureau. It also provides that all moneys paid under protest shall be placed in the same fund to remain undistributed, thus giving the taxpayer his statutory right to assert the illegality of the assessment. Some 3 years expired before relator took action seeking a refund.

The case of Morrison-Knudsen Company, Inc. was consolidated with Rutherford for trial in the district court and for review on appeal. Morrison-Knudsen likewise was a contractor performing services for the United States, and while there are factual differences, the essential facts do not differ from those in Rutherford in that Morrison-Knudsen failed to pay the taxes under protest as required by § 72-16-28, supra. The same legal principle announced in Rutherford is decisive as to Morrison-Knudsen.

The judgment should be reversed with direction to the lower court to set aside its judgment and enter judgment sustaining the order of the Commissioner of the Bureau of Revenue.

It is so ordered.

CARMODY, C. J., and CHAVEZ, NOBLE, and MOISE, JJ., concur.